# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

  v.                                      Case No. 19-CR-85

RICHARD D. ABBOTT,

          Defendant.

## RECOMMENDATION THAT THE DEFENDANT'S MOTION TO SUPPRESS BE DENIED

The grand jury returned an indictment on May 7, 2019, charging Richard D. Abbott with four counts of bank robbery by force or violence and two counts of use and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 1.)

On November 27, 2019, Abbott filed a motion to suppress his identification as the robber following a lineup and a photo array. He requested an evidentiary hearing regarding the photo array. (ECF No. 37.) On December 6, 2019, the court denied Abbott's request for an evidentiary hearing. (ECF No. 41.) The briefing regarding Abbott's motion to suppress is now complete and the matter is ready for resolution.

The relevant facts are undisputed. There were four bank robberies: (1) November 27, 2018, at the Associated Bank on South Chicago Avenue in South Milwaukee; (2) November 30, 2018, at the North Shore Bank on West Oklahoma Avenue in Milwaukee; (3) December 1, 2018, at the Town Bank on South First Street in Milwaukee; and (4) December 15, 2018, at the Associated Bank on South Kinnickinnic Avenue in St. Francis. (ECF No. 37 at 1-2.)

Witnesses from three of the four robberies viewed a live lineup at the Milwaukee Police Administration Building on December 21, 2018: three tellers from the South Chicago Avenue robbery, two tellers from the West Oklahoma Avenue robbery, and three tellers from the South Kinnickinnic Avenue robbery. (ECF No. 37 at 3-4.) The lineup was video recorded, and the parties have provided the court with those recordings. Witnesses were seated in a room that resembled a classroom containing three rows of long tables. The witnesses each had in front of them papers on which they were instructed to indicate whether each participant in the lineup was the individual who robbed the bank at which he or she worked. Each table had partitions between the witnesses that served to obstruct each witness's view of the other witnesses' papers. At the front of the room was a large glass window into a bare adjoining room where the lineup participants were presented individually to the witnesses.

Two witnesses from each of the three robberies identified Abbott as the robber. (ECF No. 37 at 4.) One witness each from the South Chicago Avenue and the South

2

Kinnickinnic Avenue robbery failed to identify any person in the lineup. Thus, in total, six witnesses identified Abbott; two were unable to identify anyone.

Although no witnesses from the South First Street robbery attended the live lineup, the following day two tellers from South First Street bank viewed a sequential photo array that contained photographs of the lineup participants. *See United States v. Ford*, 683 F.3d 761, 765 (7th Cir. 2012) (discussing techniques to increase reliability of identification procedures including the use of sequential photo arrays). Both tellers identified Abbott as the robber of the South First Street bank.

"The danger to be avoided in identification procedures is that of *orchestrating* the procedure so that one particular suspect stands out from the others and the procedure implicitly suggests to the witness that 'this is the man.'" *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003) (emphasis in original) (citing *Foster v. California*, 394 U.S. 440, 442-43 (1969)). Courts undertake a two-step process in assessing whether an identification procedure was unduly suggestive. *Id*. At the first step the burden is on the defendant to demonstrate that the identification procedures were unduly suggestive. *Id.* Only if the defendant satisfies this first step will the court move to the second step, which is a consideration of whether "under the 'totality of the circumstances' … the identification was sufficiently reliable to prevent misidentification." *Id.*

> In assessing the reliability of an identification procedure, the courts consider the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of

> certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation."

*Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

Abbott argues the identification procedures were unduly suggestive because only the first two participants in the live lineup were asked to say anything during the lineup; three of the participants had light complexion; and Abbott was the thinnest of the participants. (ECF No. 37 at 5-6.) As to the photo array, his argument is essentially *res ipsa loquitur*. He cannot point to anything additional that was allegedly improper but argues that the identification process *must* have been unduly suggestive for any witness to identify a suspect given how thoroughly concealed the robber was in the surveillance video of the South First Street bank robbery.

"Authorities conducting lineups are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation. They are not required to search for identical twins in age, height, weight, or facial features." *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002) (citing *United States v. Moore,* 115 F.3d 1348, 1361 (7th Cir. 1997). "The fact that the other lineup participants could not pass for [the defendant's] twins did not make the lineup unduly suggestive." *Id*. "[P]articipants in a lineup need only have 'descriptive features within a reasonable range of similarity to each other.'" *United States v. Curry*, 187 F.3d 762, 769 (7th Cir. 1999) (rejecting defendant's argument that lineup was unduly suggestive because "he was the shortest of the suspects (and, as a result, his numbered chest card hung lower than the others, drawing the

witness's eye to him), he was much less bulky, and he had a less round face") (quoting *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996) (rejecting defendant's argument that lineup was unduly suggestive because, compared to the other participants, he was the only one with dark complexion, three to five inches shorter, 20-45 pounds lighter, and older)).

The court has reviewed the video recording of the live lineup as well as the photographs of the participants. All the participants are within a reasonable range of similarity in appearance such that the court does not find the composition of the lineup to be unduly suggestive. A person viewing those exhibits without knowledge of who the defendant was (which was how the court initially reviewed the exhibits), would not recognize any person as standing out from the group. Simply because a defendant may possess some attribute (for example, slenderness) that put him on one end of the spectrum of the lineup participants does not make the lineup unduly suggestive. *See, e.g.*, *Curry*, 187 F.3d at 769. To the contrary, a defendant who found himself positioned as the median in terms of characteristics could argue that this, too, had the effect of highlighting him. More importantly, as to Abbott's contention that he was obviously the slimmest of the participants such that the lineup suggested he was the robber, the court disagrees that his build is so much slighter than the other participants as to suggest he was the robber. As for the complexions of the participants, again, while not identical, they were all reasonably similar such that the lineup could not be said to be unduly suggestive.

As to Abbott's argument that the lineup was unduly suggestive because only the first two participants were asked to speak, Abbott argues, "by asking the first two inmates to speak, but not the remaining four, the police suggested to the viewers that it did not matter what was said, because the first two were not the target." (ECF No. 37 at 5.) The court finds the inverse more likely to be true. The participants who were asked to speak (neither of whom was Abbott) were arguably highlighted for special attention. The record does not contain an explanation for why only the first two participants were asked to speak, but the government suggests a technical problem prevented the witnesses observing the lineup from hearing the first two lineup participants when they spoke. This inference is supported by the video recording of the lineup, which contains audio and seems to document what was heard in the witness room. An investigator is heard providing instructions to witnesses and participants, including the request that the first two participants say, "This is a robbery." Both participants' mouths are seen to move but nothing is heard.

Under these circumstances, the witnesses would have readily recognized that the reason none of the last four lineup participants were asked to speak was because of a problem with the audio. In no way would a witness think that the request to have only the first two participants speak was part of some attempt to orchestrate the identification of any person, and certainly not Abbott, who was one of the four not asked to speak.

6

As for Abbott's additional argument regarding the photo array, the court agrees that the video of the South First Street robbery depicts a robber whose appearance is well-concealed. However, the concealment was not so complete as to render the robber devoid of identifiable characteristics. Moreover, the court must be mindful that the video does not necessarily capture what the witnesses saw. While the video was recorded many feet away from and above the robber, the witnesses encountered the robber at eye level and at a range of inches. In fact, in what may have been a conscious attempt to obscure his face from the cameras above, the robber appeared to crouch and keep his head down so the video tended to record the top of his hooded head.

According to the report, the first witness identified Abbott based on forehead, skin complexion and "the slimness of his face." Ex. 3, Bates Stamped ABBOTT_Reports_000100. The other witness identified Abbott because of his "face, complexion and the structure of his neck." Ex. 4, Bates Stamped ABBOTT_Reports_000101. The ability to identify a person based on isolated traits is consistent with an average person's experience. This is particularly true when a witness has longer to observe a suspect. While Abbott attempts to characterize the two minutes that the robber interacted with the witnesses as short, that is relatively long in the context of a robbery and ample time for an average person to note distinctive characteristics. *Cf. United States v. Farmer*, No. 2:15-CR-72, 2019 U.S. Dist. LEXIS 210671, at *15 (N.D. Ind. June 7, 2019) (finding observation of 3 to 10 seconds sufficient time to make a reliable

7
Case 2:19-cr-00085-LA    Filed 01/23/20    Page 7 of 8    Document 48

identification) (citing *United States v. Saunders*, 501 F.3d 384, 392 (4th Cir. 2007) (finding reliable identification under the circumstances where witness saw the suspect for "about three to four seconds"); *United States v. De Leon-Quinones*, 588 F.3d 748, 754 (1st Cir. 2009) (three second view supports reliability analysis)).

Because the court finds none of the identification procedures were unduly suggestive, it is unnecessary to discuss the second step and whether, under the totality of the circumstances, the identifications were nonetheless reliable.

**IT IS THEREFORE RECOMMENDED** that Richard Abbott's Motion to Suppress Identification (ECF No. 37) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 23rd day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge